UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL MARINI,

Plaintiff,

v.

EXPERIAN INFORMATION
SOLUTIONS, INC.

Defendant.

Case No. 25-cv-11721
Honorable Shalina D. Kumar
Magistrate Judge Kimberly G. Altman

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS (ECF NO. 13) AND TERMINATING AS MOOT DEFENDANT'S MOTION TO STAY DISCOVERY (ECF NO. 14)**

## I.      INTRODUCTION

Plaintiff Michael Marini brings this action alleging that defendant Experian Information Solutions, Inc. ("Experian") violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 16810, by incorrectly reporting information on his credit report. ECF No. 1. Experian filed a motion to compel arbitration and stay this case. ECF No. 13. It also moved to stay discovery pending the resolution of its motion to compel. ECF No. 14. These motions have been fully briefed, and the Court heard oral argument on May 13, 2026. For the following reasons, the Court grants Experian's

motion to compel arbitration, stays the proceedings pending arbitration, and terminates the motion to stay discovery as moot.

## II.   FACTUAL BACKGROUND

According to Marini's complaint, he learned he had been the victim of identity theft in 2023. ECF No. 1. Marini's personal data was supplied fraudulently to obtain credit from Capital One Bank, NA ("Capital One"). *Id.* The thief incurred charges to the account opened in Marini's name for which he did not pay. *Id.* Capital One reported information regarding the account in Marini's name to Experian,[1] which ultimately reported that Marini had defaulted on the Capital One account by failing to pay for more than 180 days. *Id.*

Marini discovered that the defaulted fraudulent Capital One account, reflecting a charged off, past due debt of $10,108, appeared on his Experian credit report in May 2023. *Id.* After attempting unsuccessfully to dispute the inaccurate reported account with Experian by phone, Marini tendered a written dispute, including copies of his identity theft affidavit and

---

[1] Capital One also reported the information for its account in Marini's name to the other credit reporting agencies, Equifax and TransUnion. Marini filed separate suits against those agencies, *Marini v. Equifax Information Systems, LLC*, 25-cv-13906 and *Marini v. TransUnion, LLC*, 25-cv-13706, which also are pending before this Court.

the police report he filed, to Experian. *Id.* In response, Experian removed the disputed account from Marini's credit file in December 2023. *Id.*

Yet, shortly after removing the Capital One account from Marini's credit report, Experian reinserted it. Experian informed Marini that it did so because: the request to remove the information was based on a material misrepresentation; he had agreed in writing that the information was removed in error; or he knowingly obtained or should have known he obtained goods, services, or money as a result of the removed transactions. *Id.* Although Marini disputes that any of those reasons is true, the fraudulent Capital One debt remains on his credit reports. *Id.* Consequently, Marini's complaint alleges that Experian's credit file and reports issued based on that file contain false, inaccurate, and misleading information relating to the fraudulent Capital One account opened by the identity thief. *Id.* Marini further alleges that he suffered an adverse action on a home loan application in February 2024 because of the publication of the inaccurate information on his credit report. *Id.*

Experian argues that it is entitled to litigate this matter by way of arbitration because Marini agreed to arbitrate disputes between it and him when he enrolled in CreditWorks, Experian's credit monitoring service provided by its affiliate, ConsumerInfo.com, d/b/a Experian Consumer

Services ("ECS"). CreditWorks provides subscribers with credit reports, credit report scores, credit monitoring, credit score monitoring, credit score tracking, and alerts notifying consumers of changes to information contained in their credit reports. *See* ECF No. 13-1, PageID.106.

According to Experian, as part of the enrollment process, Marini agreed to the Terms of Use Agreement ("Use Agreement") governing that service. ECF No. 13-1, PageID.104–05, 109. The Use Agreement includes an agreement to arbitrate any dispute arising between Marini and ECS and its affiliates, which explicitly includes Experian. *Id.* at PageID.117–21. Experian argues that the arbitration agreement applies to all claims against ECS (including its affiliates) that "relate to" or "arise out of" the Use Agreement, specifically including FCRA claims for information provided through its Services, which is defined to include credit reports. *Id.* at PageID.105, 111–12, 118–19.

Marini does not dispute that he enrolled in the CreditWorks program. Instead, he argues that he is not subject to the arbitration provision in the Use Agreement because he never assented to the Use Agreement, or its arbitration provision, and, even if he had, the Use Agreement cannot be enforced by Experian because it is neither a party nor a third-party beneficiary to that agreement. Unfortunately for Marini, courts in this circuit

and nationwide have uniformly rejected the arguments he advances, and he has not persuaded this Court to do otherwise.

### III. DISCUSSION

### A.

The Federal Arbitration Act requires district courts to compel arbitration of claims covered by a valid arbitration agreement. *Bazemore v. Papa John's U.S.A., Inc.*, 74 F.4th 795, 797–98 (6th Cir. 2023) (citing 9 U.S.C. § 4). The party seeking arbitration must prove that such an agreement exists. *Id*. at 798 (citing *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 839 (6th Cir. 2021)). If the court looks beyond the complaint to an arbitration agreement or other evidence outside the four corners of the complaint, it must apply the same standard as used for summary judgment. *Boykin*, 3 F.4th at 838. The movant "must initially carry its burden to produce evidence that would allow a reasonable jury to find that a contract exists" by applying "ordinary state-law principles." *In re StockX Customer Data Sec. Breach Litig.,* 19 F.4th 873, 881 (6th Cir. 2021).

**B.**

Under Michigan law,[2] "[a] valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich. v. State of Mich.*, 866 N.W.2d 782, 804 (Mich. 2015). Marini first argues that the User Agreement (and the arbitration agreement contained within it) is not a valid contract because he did not assent to its terms (mutuality of agreement). *See In re StockX,* 19 F. 4th at 881. Mutuality of agreement requires "an offer and acceptance." *See Bodnar v. St. John Providence, Inc.*, 933 N.W.2d 363, 369 (Mich. Ct. App. 2019); *Kloian v. Domino's Pizza, L.L.C.*, 733 N.W.2d 766, 770 (Mich. Ct. App. 2006). Whether a party has accepted an offer is decided "by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *See In re StockX,* 19 F. 4th at 882 (quoting *Kloian*, 733 N.W.2d at 771 (internal marks omitted).[3]

---

[2] The parties agree that Michigan law applies to this case.

[3] Marini resists much of the authority cited by Experian because it applies contract law from other states. Although not cited by Experian, cases from the Sixth Circuit and this district analyze contract formation under Michigan law generally and specifically in connection with the same agreement at issue here. *See In re StockX*, 19 F.4th at 881 (applying Michigan law to analyze contract formation); *Williams v. Experian Info. Sols., Inc.*, 2025 WL

"These elemental principles of contract formation apply with equal force to contracts formed online. Thus, if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests . . . acceptance of those terms, an enforceable agreement can be formed." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855–56 (9th Cir. 2022) (applying California law) (cited with approval by *Dahdah v. Rocket Mortgage, LLC*, 166 F.4th 556, 577 (6th Cir. 2026)). When online contract terms appear on the screen with a box explicitly saying "I agree" for the user to click in order to proceed, the clicking of that box unambiguously manifests the user's assent such that the agreement is valid and enforceable. *See id.* at 856.

Conversely, courts are reluctant to enforce online agreements in which the terms are disclosed only if the user clicks a hyperlink to another page and its assent is manifested only by continued use of the website. *Id*. Hyperlinks are often obscured within the website such that a reasonable user would "lack any reason to know that their use of the site signals their acceptance of those hidden terms." *Dahdah*, 166 F.4th at 568 (citing Restatement (Second) of Contracts § 19(2)).

---

2983141 (E.D. Mich. Oct. 22, 2025) (applying Michigan contract formation law to the same agreement at issue here).

However, many if not most online agreements are hybrids of these two extremes. *See id*. Some provide the terms of the agreement via hyperlink and require clicking a button with language less explicit than "I agree," such as "create an account" or "continue." *See id*. at 568–69. To qualify as a valid offer, a "website's proposal must give 'reasonably conspicuous' notice that a user will accept the terms by clicking a button, signing into an account, or taking a similar action." *Id*. at 569 (quoting *Berman*, 30 F.4th at 856). "[T]o qualify as a valid acceptance, the user must objectively show assent to the terms by . . . taking the specified action." *Id*.

Marini argues that the design and layout of the CreditWorks enrollment page does not adequately signal to the user that he is agreeing to an arbitration clause, or the terms of the Use Agreement, and thus cannot be deemed "reasonably conspicuous." Relying almost entirely on the district court's decision in *Dahdah*, Marini argues that although the necessary notice words appear on the form, they are sufficiently obscured by page-clutter, placement, font size and color to prevent a "reasonably prudent Internet user" from seeing it. *Berman*, 30 F.4th at 856; *see Dahdah*, 2023 WL 11944898 (E.D. Mich. Nov. 17, 2023).

The *Dahdah* court considered the website interfaces below:[4]

**Property Address** 🔒
We respect your privacy.
**Street**

**State / City**

CA - Los Angeles ▾

**Email Address** 🔒
We respect your privacy

**Calculate**

By clicking the button above, you agree to be contacted by LowerMyBills, at the address
entered above for promotional emails and consent, electronically via E-sign, to the LMB
Lending Terms of Use, Privacy Policy, and Consent to Doing Business Electronically.

Featured Provider



---

[4] The website offer in *Dahdah* appeared slightly differently on the different occasions that plaintiff viewed it. The two relevant interfaces the court considered are pictured here. *See Dahdah*, 166 F.4th at 577.

*Dahdah*, 166 F.4th at 563–64. The district court determined that "the tiny

light gray font, located *below* the large green . . . 'Calculate' button"

rendered the notice less than reasonably conspicuous. *Dahdah*, 2023 WL

11944898, at *9 (emphasis in original). The decision noted that "[m]ost

cases conclude that placement of the hyperlinked notice to be of critical

importance, finding notice sufficient where they are located above or next

to the assent button" and that a "user is less likely to notice the text and more likely to click the button before reading" if the text is below the action button. *Id*. at *8 (first citing *Lee v. Panera Bread Co.*, 2023 WL 2606611, at *4 (E.D. Mich. Mar. 6, 2023), *as adopted by*, 2023 WL 2603934 (E.D. Mich. Mar. 22, 2023); and then citing *Gaker v. Citizen Disability, LLC*, 2023 WL 1777460, at *5 (D. Mass. Feb. 6, 2023)).

After Marini filed his response in opposition to Experian's motion to compel arbitration, the Sixth Circuit reversed the district court's decision in *Dahdah*, finding that the sign-up page at issue (see above) provided a reasonably conspicuous offer to which plaintiff manifested his assent. *Dahdah*, 166 F.4th at 578. Specifically, the appellate court found that the sign-up pages followed a simple design, without distracting images to divert a user's attention away from the offer and the crucial buttons; that the spatial and temporal proximity between the offer and the action button were sufficiently close to create conspicuousness; that the font of the hyperlink to the terms of the offer, although small, was highlighted in a bright blue "that contrasted sharply with the white background." *Id*. That the offer appeared directly below the action button (as opposed to directly above or adjacent to it) did not trouble the court because it did not find it to be a critical difference, noting that other courts enforced offers placed below rather than

above the button signaling the user's assent. *Id*. at 580. The appellate court also recognized that "the offer arose in a context in which one would expect an 'ongoing relationship' " with the defendant, although it conceded that issue was "a close call." *Id*.

In this case, CreditWorks' offer appears above a bright purple action button. ECF No. 13-1, PageID.109.



Thus, even if the lower court's objections to offers appearing below the action button in *Dahdah* had been upheld, it would fail to suggest that the offer on the CreditWorks enrollment page was not reasonably conspicuous. Furthermore, unlike the *Dahdah* offer's challenged light gray font, the CreditWorks' offer appears in a bolded, black font, with the hyperlink to the User Agreement set off from the other print and the white background in a distinct blue font.

Regardless, in reversing the lower court's decision, the Sixth Circuit ruled that the *Dahdah* offer, which was less conspicuous (lighter-colored and smaller font, located under the action button) than the one at issue here, was sufficiently prominent to provide notice of its terms to the user before he assented by clicking the action button. *See Dahdah*, 166 F.4th at 578-80. The darker, clearer, more noticeable features of the CreditWorks offer terms undoubtedly achieve the reasonably conspicuous notice required for mutual assent.

Indeed, at least one court in this district assessed the same CreditWorks online enrollment page at issue here and found that it conspicuously discloses to the user that by clicking the "Create Your Account" button, the user accepts and agrees to the Use Agreement. *See*

Page 13 of 18

*Williams v. Experian Info. Sols., Inc.*, 2025 WL 2983141, at *8 (E.D. Mich. Oct. 22, 2025). The *Williams* court notes that the phrase "Terms of Use Agreement" appears on the screen as a blue hyperlink that, when clicked, leads to the full text of the Terms of Use Agreement, including the arbitration provision. *Id*. Based on the conspicuous "Terms of Use Agreement and clear statement indicating that clicking the 'Create Your Account' button constituted an agreement with" those terms, the user was put "on reasonable notice that creating an . . . account would manifest assent to the linked terms." *Id*. (first citing *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265 (M.D. Tenn. 2020); and then citing *Lee*, 2023 WL 2606611).

Courts in other circuits have likewise found that users creating an account from the same CreditWorks enrollment page at issue here assented to the Terms of Use Agreement because "the words, Term of Use Agreement were set off in blue text on an uncluttered background, close to the portions of the form that a [user] had to fill out and click" and "that nothing about the website design or layout obscured the conspicuous location of the Terms of Use hyperlink*." Austin v. Experian Info. Sols., Inc.*, 148 F.4th 194, 207 (4th Cir. 2025) (quoting *Dhurva v. CuriosityStream, Inc.*, 131 F.4th 146, 152 (4th Cir. 2025)) (internal quotations omitted); *see also*

*Lamonaco v. Experian Info. Sols.*, Inc., 141 F.4th 1343, 1347–48 (11th Cir. 2025); *Driskill v. Experian Info Sols., Inc.*, 753 F. Supp. 3d 839, 845 (N.D. Cal. 2024); *Myers v. Experian Info. Sols. Inc.*, 734 F. Supp. 3d 912, 920 (D. Ariz. 2024).

The Court agrees with the other courts that have reviewed the CreditWorks' enrollment page and finds that it provides reasonably conspicuous notice of the offered Use Agreement and its terms, including the arbitration provision, thus constituting a valid offer. Marini does not contest that he clicked the "Create Your Account" button, thereby taking the necessary action to objectively demonstrate assent. Accordingly, the Use Agreement with its arbitration provision satisfies the mutual agreement element for contract formation.

## C.

Marini also argues that, even if a valid arbitration agreement exists, it does so only as to the parties to the Use Agreement—Marini and ECS—and not to Experian, which Marini argues is not a party to that agreement. He argues that Experian (as opposed to ECS) cannot enforce the arbitration provision because, he maintains, no valid arbitration agreement was formed between him and Experian, a non-signatory to the Use Agreement. Experian contests this assertion, arguing both that it is indeed

a party by virtue of the explicit language of the Use Agreement and the arbitration provision therein and that it otherwise could enforce the arbitration agreement as a third-party beneficiary to the Use Agreement. Experian also argues that the arbitration agreement delegates the issue of whether it can enforce it to the arbitrator.

Marini counters that merely naming Experian as an affiliate in the Use Agreement does not allow it to enforce the terms of that agreement. He maintains that there was neither consideration nor mutuality of obligation between him and Experian, thus preventing the formation of any contract, including the arbitration agreement, between them.

"[W]hether a non-signatory . . . can enforce a delegation clause against signatories . . . presents a legal conundrum because generally, it is the courts responsibility to determine whether a contract exists at all, and if the nonsignatories are not parties to the contract, then the Plaintiff has no agreement with them." *Swiger v. Rosette*, 989 F.3d 501, 506–07 (6th Cir. 2021) (internal quotation and marks omitted); *see also In re StockX*, 19 F.4th at 879 (even where agreement contains delegation provision, the court must determine whether a valid arbitration agreement exists before compelling arbitration). The Sixth Circuit resolved that this "conundrum" presents a question of arbitrability, and thus, under a delegation clause,

Page 16 of 18

whether a non-signatory may enforce an arbitration agreement against a signatory must be decided by the arbitrator, and not the Court.[5] *Swiger*, 989 F.3d at 507.

The Court agrees with Experian that the arbitration agreement delegates this question to the arbitrator. The arbitration agreement at issue here delegates issues of arbitrability, specifically including the scope and enforceability of the agreement, to the arbitrator. *See* ECF No. 13-1, PageID.120 ("All issues are for the arbitrator to decide including, but not limited to, (i) all issues regarding arbitrability, (ii) the scope and enforceability of this arbitration ability . . . ."). Marini does not specifically challenge that delegation. The Court thus finds that the question of whether Experian can enforce the arbitration agreement against Marini must be resolved by the arbitrator.

### IV.   CONCLUSION

---

[5] A party subject to an arbitration agreement with a delegation clause may resist the delegation of the question of arbitrability to the arbitrator only by specifically challenging the delegation clause. *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 356 (6th Cir. 2022) (citing *Rent-a-Center, W., Inc. v. Jackson*, 561 U.S.63, 68 (2010)). Such a challenge must be directed specifically to the delegation provision, not to the arbitration agreement as a whole. *Id.* (party's challenge to a delegation clause must be based on different factual or legal grounds that the ones supporting its challenge to the agreement in its entirety).

For these reasons, the Court **GRANTS** Experian's motion to compel arbitration (ECF No. 13) and **STAYS** Marini's claims against Experian pending completion of the arbitration. Experian's motion to stay discovery (ECF No. 14) is **TERMINATED AS MOOT**.

**IT IS SO ORDERED**.

s/Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated: May 26, 2026